**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

**Aki Jones,**
**Plaintiff,**

**Case No.:**

**v.**

**Jury Trial Demanded**

**Credit Acceptance Corporation,**
**Defendant.**

**COMPLAINT**

## I.  JURISDICTION

1.      The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), the Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the defendant.

2.      This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3.      This is a suit authorized and instituted under the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), et seq. (ADEA).

4.      This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

1

5.     This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

6.     The plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.   PARTIES

7.     The plaintiff, Aki Jones née Henderson ("Plaintiff" or "Jones") is a resident of Mobile, Mobile County, Alabama, and performed work for the defendant in the counties composing the Middle District of Alabama, Northern Division, during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Middle District of Alabama, Northern Division.

8.     At all times relevant to the allegations in this Complaint, the plaintiff was over the age of forty (40).

9.     The defendant, Credit Acceptance Corporation ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

10.     The defendant employed at least fifteen (15) people during the current or preceding calendar year.

11.    The defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. The defendant employed these fifty (50) employees within 75 miles of the plaintiff's worksite.

12.    The defendant has more than 500 employees.

13.    The defendant's gross annual revenue exceeds $500,000.

## III.    FACTS

14.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

15.    Jones is a person of African ancestry, the race colloquially referred to as Black.

16.    Jones is over the age of 40.

17.    Jones is a person with one or more disabilities, including Depression and Anxiety.

18.    Jones' disabilities impact one or more major life activities, including sleeping, thinking, and working.

19.    Jones performed work for the Defendant in Montgomery County, Alabama.

20.    Credit Acceptance Corporation is a Southfield, Michigan Corporation.

21.    Credit Acceptance Corporation employs more than 500 employees.

22. Jones began working for Credit Acceptance in February 2015 and worked until July 2016, when she left for another opportunity.

23. Jones returned to Credit Acceptance in 2021 as a Market Area Manager.

24. All of Jones's Performance Appraisals were satisfactory until the events described in the Complaint.

25. In her role, Jones was responsible for signing up automotive dealerships to present Defendant's loan products to their customers and encouraging existing dealers to present their offerings to their clients who needed to finance their vehicles.

26. For the first two years of her employment, Jones, at times, led the country in contracts from new enrollments.

27. She also led the market for growth at times.

28. As the years went by, market forces in the Automotive lending industry related to the effects of the pandemic created instability in Jones' market.

29. Specifically, five independent car dealers within her market went out of business, which significantly decreased the number of loans that were being written.

30. At the same time, the economic conditions were not as favorable, and there were fewer new dealerships coming online to replace those contracts.

31. When these events occurred, Jones proactively raised the market conditions with her manager, Mark Seay.

32. Seay acknowledged that the conditions were poor and that there was nothing that could be done.

33. Seay told her that she should just keep doing as she had been.

34. Jones also discussed how she had been impacted by the market conditions with Laura Nelson, her coworker at the time.

35. Nelson told Jones that she believed it would be impossible to recover from the loss of the dealerships.

36. At the same time, the company began to decline more credit applications.

37. In or around May of 2023, Seay left the company and was replaced by Nelson.

38. Nelson did not immediately make any moves to discipline Jones.

39. In September 2023, Plaintiff's brother died unexpectedly.

40. After the death, Jones began experiencing the effects of her disability.

41. When she began to have a flare of her condition, Jones asked for an accommodation for her disability, time off from work.

42. Jones took eight weeks of leave for her disability.

43. Jones returned in December 2023.

44. Six weeks after she returned, the company placed her on a Performance Improvement Plan, despite knowing that she had been on leave for a significant period, and it generally takes at least three months for any work that is done in recruiting to result in a change.

45. Before the medical leave, the company had made no moves to discipline Jones for the market conditions affecting her territory.

46. The Performance Improvement Plan required Jones to increase contracts by as many as 50 per month.

47. In a typical month, Market Area Managers would increase by about 10 contracts per month.

48. After she returned from her leave, Jones requested another accommodation, a transfer to an open Remote Area Manager position for which she was qualified.

49. The company denied the accommodation request but told her that she could apply.

50. Jones applied for the job.

51. After she applied for the position, she was interviewed but did not get advanced to the second round of interviews for the position despite having the qualifications and being told that she would advance.

52. At the time that she declined, Jones was told that she was being declined because she would have been going back in her position, meaning it would have been a demotion.

53. Upon information and belief, the person who filled the position was Mildred Carrillo, a younger person of a different race who did not have a disability, nor request accommodation for her disability, and had not recently taken FMLA.

54. In addition, the reason given for the decline was false, as the successful candidate was less qualified and was also taking a step backward in responsibility.

55. The only position the company would consider transferring Jones to was not in sales and would have changed her from an exempt employee to an hourly one, making roughly one-third of her prior earnings.

56. On or about March 3, 2024, Jones had a flare of her disabilities, and she requested additional medical leave.

57. Jones took six weeks of leave.

58. When she returned, the company gave away half of her market.

59. The company gave the Tuscaloosa market to a younger, white male, Corey Andrews.

60.   As a result of the transfer, Andrews received a Top Gun award due only to the work Jones had completed, as the increase in sales occurred while he was in training and not yet making any sales calls.

61.   Ordinarily, when a market is split, the company gives the market manager a year to adjust and build the market.

62.   Specifically, Andre Washington, a male who does not have a disability, was given a year to adjust and build a new market.

63.   Blake Catelano, a younger, white male, also had his market split and was given a year to adjust and build the new market.

64.   Kenneth Varney, a white male, also had his market split and was given a year to adjust and build the new market. He was later promoted to Director of Sales even though his numbers did not meet metrics.

65.   Jones was not given any additional time to adjust and build her new market.

66.   Despite the unreasonable and unachievable goals, Jones made significant progress.

67.   In fact, Jones was not the lowest-performing person on the team.

68.   Despite not being the lowest performer on the team, Jones was terminated on or about September 10, 2024, citing her inability to meet the requirements of the PIP.

## IV.   COUNT I - ADA FAILURE TO ACCOMMODATE

69.   The plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

70.   The plaintiff began working for the defendant on or about 2021, as a Market Area Manager.

71.   The plaintiff suffers from Depression and Anxiety, a mental impairment.

72.   The plaintiff's disabilities significantly restrict the major life activities of sleeping, thinking, and working as compared to the average person in the general population.

73.   The plaintiff required reasonable accommodation, a transfer to an open Remote Area Manager position for which she was qualified.

74.   The plaintiff requested that the defendant provide reasonable accommodation.

75.   The plaintiff performed the essential functions of the job without accommodation for disability.

76.   The defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though the plaintiff performed the essential functions of the job.

77.    Because of the defendant's violation of the ADA, the plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V.    COUNT II - ADA DISCRIMINATION - TERMINATION

78.    The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

79.    The plaintiff suffers from Depression and Anxiety, a mental impairment.

80.    The plaintiff's disabilities significantly restrict the major life activities of sleeping, thinking, and working as compared to the average person in the general population.

81.    The defendant knew the plaintiff's disability.

82.    The plaintiff's disabilities affect her such that the major life activities of sleeping, thinking, and working are significantly restricted as compared to the average person in the general population.

83.    The plaintiff performed the essential functions of the job without accommodation for disability.

84.    At all times relevant to this complaint, the plaintiff performed the essential functions of her duties as Market Area Manager in a satisfactory or better manner.

85.    On September 10, 2024, the defendant terminated the plaintiff's employment, citing her inability to meet the requirements of her PIP as the reason. However, this is pretextual.

86.    Andre Washington, a male who does not have a disability, was given a year to adjust and build a new market.

87.    Blake Catelano, a younger, white male who does not have a disability also had his market split and was given a year to adjust and build the new market.

88.    Kenneth Varney, a white male who does not have a disability, also had his market split and was given a year to adjust and build the new market then promoted to Director of Sales.

89.    The defendant filled the plaintiff's position with a person who does not have a disability, or whose disability was unknown to the defendant at the time of hire.

90.    But for the plaintiff's disability, the defendant would have retained the plaintiff in her position as a Market Area Manager.

91.    The defendant violated the ADA by terminating the employment relationship because of her disability.

92.    Because of the defendant's violation of the ADA, the plaintiff has been damaged, suffering loss of pay, benefits, other monetary and non-monetary losses, and mental anguish.

11

## VI.    COUNT III - ADA –- RETALIATION

93.    The plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

94.    The plaintiff was qualified for her position and able to perform the essential functions of the job.

95.    On or about March 3, 2024, the plaintiff engaged in protected activity when she requested accommodation for her disability.

96.    On or about September 10, 2024, the defendant terminated the plaintiff's employment.

97.    But for the plaintiff's protected activity, the defendant would have retained the plaintiff in her position as a Market Area Manager.

98.    The defendant violated the ADA by terminating the plaintiff for engaging in protected activity.

99.    Because of the defendant's violation of the ADA, the plaintiff has been damaged suffering loss of pay, benefits, other monetary and non-monetary losses and mental anguish.

## VII.    COUNT IV - ADEA -TERMINATION

100.    At all times relevant to the allegations in this Complaint, the plaintiff was over the age of forty (40).

12

101.   The defendant hired the plaintiff on or about 2021.

102.   The defendant terminated the plaintiff's employment on or about September 10, 2024.

103.   When the defendant terminated her employment, the plaintiff was over forty (40) years of age and substantially older than Blake Catelano.

104.   Catelano engaged in the same or similar conduct but remained employed.

105.   The defendant's actions in terminating the plaintiff's employment, while retaining employees under age 40, violated the ADEA.

106.   The defendant's actions in terminating the plaintiff's employment, while retaining substantially younger employees, violated the ADEA.

107.   Because of the defendant's violation of ADEA, the plaintiff has been damaged, suffering loss of pay and benefits.

## VIII.   COUNT V - TITLE VII - RACE DISCHARGE

108.   The plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

109.   The plaintiff is a person of African ancestry, the race colloquially referred to as Black.

110.   The plaintiff was qualified for the Market Area Manager position.

111. The defendant's employee terminated the plaintiff's employment on or about September 10, 2024.

112. Blake Catelano, who is not a person of African ancestry, engaged in the same or similar conduct but remained employed.

113. Kenneth Varney, who is not a person of African ancestry, engaged in the same or similar conduct but remained employed.

114. The defendant's actions in terminating the plaintiff's employment violated Title VII.

115. Because of the defendant's violation of Title VII, the plaintiff has been damaged, suffering loss of pay and benefits.

116. The defendant did not terminate Catelano for the same or similar conduct.

117. The race was a motivating factor in the defendant's decision to terminate the plaintiff's employment.

118. Because of the defendant's discriminatory decision made in whole or in part because of race, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits other monetary and non-monetary losses and mental anguish.

14

## IX.    COUNT VI - 42 U. S. C. § 1981 DISCHARGE

119.    The plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

120.    The plaintiff is a person of African ancestry, the race colloquially referred to as Black.

121.    The plaintiff was qualified for the Market Area Manager position.

122.    On or about September 10, 2024, the defendant terminated the plaintiff's employment.

123.    The defendant's decision to terminate the plaintiff's employment was made, in whole or part, because of race in violation of 42 U. S. C. § 1981.

124.    Because of the defendant's violation of 42 U. S. C. § 1981, the plaintiff has been damaged and continues to be damaged, suffering loss of pay, benefits other monetary and non-monetary losses and mental anguish.

## X.    COUNT VII - FMLA RETALIATION

125.    The plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

126.    During the 12-month period before September 2023, the defendant employed the plaintiff for at least 1,250 hours of service.

127. The defendant employs fifty (50) or more people for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before September 2023.

128. During the week of September 2023, the defendant employed fifty or more employees who worked within 75 miles of the location where the plaintiff worked.

129. On or around September 2023, the plaintiff provided notice of unforeseeable FMLA leave to Laura Nelson, Director of Sales in the Alabama Region, and the Human Resources department.

130. The plaintiff provided notice of her unforeseeable need for FMLA leave as soon as practicable due to her medical emergency.

131. Before September 2023, the plaintiff had never informed the defendant of a need for FMLA leave.

132. The defendant terminated the plaintiff's employment on September 10, 2024.

133. Laura Nelson informed the plaintiff that the defendant terminated her employment.

134. The defendant's employee, Ms. Nelson, terminated the plaintiff's employment.

135. The defendant's employee, Ms. Nelson, terminated the plaintiff's employment, in whole or part, because of the plaintiff's exercise of FMLA rights.

136. Because of the defendant's retaliatory termination decision in violation of the FMLA, the plaintiff has been damaged, suffering loss of pay and benefits.

## XI.   PRAYER FOR RELIEF

**WHEREFORE, the plaintiff respectfully prays for the following relief:**

A.     Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the Americans with Disabilities Act;

B.     Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

C.     Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

D.      Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the terms of Section 1981;

E.      Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting with the defendant and at the defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

F.      Enter an Order requiring the defendant to make the plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

G.      Award the plaintiff back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages, and or nominal damages;

H.      Attorneys' fees and costs;

I.      The plaintiff requests that the Court award the plaintiff equitable relief as provided by law; and,

J.      Any different or additional relief as determined by the Court to which the plaintiff is entitled.

DATED: July 11, 2026

**JURY TRIAL DEMANDED**

/s/ *Kira Fonteneau*

Kira Fonteneau

Counsel for  Aki Jones

**OF COUNSEL:**

THE WORKERS FIRM LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
kira@theworkersfirm.com

**PLEASE SERVE THE DEFENDANT AS FOLLOWS:**

Credit Acceptance Corporation
c/o CORPORATION SERVICE COMPANY INC
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104